## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Kari Mathiason,**

                **Plaintiff,**

**v.**                                                   **Case No. 15-9914-JWL**

**Aquinas Home Health Care, Inc.,**

                **Defendant.**

### MEMORANDUM & ORDER

This matter is before the court on plaintiff's motion for default judgment and request for hearing on damages (doc. 6).  The court held a hearing on May 13, 2016.  Defendant did not appear.  Plaintiff presented evidence in support of her motion.  The court has reviewed the evidence and plaintiff's submissions and is prepared to rule.  For the reasons stated in detail below, the court grants plaintiff's motion for default judgment and awards plaintiff her damages, attorneys' fees and costs.

### I.      Procedural History

Plaintiff filed this action on December 16, 2015, alleging that her former employer, Aquinas Home Health Care, Inc. ("Aquinas" or "Defendant"), discriminated against her on the basis of her disability and failed to provide a reasonable accommodation in violation of the Americans with Disabilities Act.  A summons was issued on December 17, 2015 and plaintiff mailed the summons and complaint to defendant's registered agent of record, David Guilfoyle, via certified mail, in compliance with Fed. R. Civ. P. 4(h)(1)(A).  The mailing was returned to

plaintiff marked undeliverable.  On January 19, 2016, pursuant to K.S.A. § 60-304(f), service was made upon the Kansas Secretary of State as defendant's statutory agent because Aquinas had failed to maintain a Kansas registered agent for service of process.  Thereafter, the Kansas Secretary of State served the summons and complaint on Aquinas on January 21, 2016, via certified mail to defendant's registered agent of record, David Guilfoyle.  Plaintiff filed an application for clerk's entry of default on March 2, 2016, after defendant failed to respond to the summons.  A clerk's entry of default was entered on March 2, 2016.  Plaintiff sent the entry of default to the Kansas Secretary of State, defendant's statutory agent, by certified mail on March 25, 2016.  Defendant never responded to the notice.  On April 7, 2016, plaintiff filed a motion for default judgment and request for hearing on damages, and served defendant.

At the May 13, 2016, hearing, plaintiff presented evidence of her damages, attorney's fees and costs in the total amount of $172,131.61, comprised of: back pay of $54,126.48; prejudgment interest on plaintiff's back pay from the date of plaintiff's constructive discharge through the date of this judgment in the amount of $7,935.88; front pay for three years following the date of this judgment in the amount of $24,585.60; compensatory damages of $25,000, including pain and suffering caused by discriminatory actions and comments to and about plaintiff by defendant, and defendant's illegally motivated decision to demote plaintiff and constructively discharge her based on her disability;  punitive damages under the ADA for the reckless and malicious disregard of her rights in the amount of $25,000, and her attorneys' fees and costs totaling $35,483.65 through the date of the hearing.  The court has reviewed and considered the evidence and legal authorities and hereby rules as follows.

## II.    Standards for Default Judgment

Plaintiff has moved for default judgment, in recognition that if plaintiff's claim is not for a sum certain, plaintiff must apply to the court for default judgment.  Fed. R. Civ. P. 55(b).  When entering default judgment and determining damages under Rule 55(b), the court is permitted to hold a hearing when necessary to: (a) conduct an accounting; (b) determine the amount of damages; (c) establish the truth of any allegation by evidence; or (d) investigate any other matter.  Fed. R. Civ. P. 55(b)(2).  "Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief."  *DeMarsh v. Tornado Innovations, L.P.*, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2688 (3d ed. 1998)); *see also Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 n.11 (10th Cir. 2003) (after an entry of default, a defendant cannot defend a claim on the merits).  "The well-pleaded factual allegations of the plaintiff's complaint are taken as true, except those allegations relating to the amount of damages."  *DeMarsh*, 2009 WL 3720180, at *2.  A trial court has broad discretion in deciding whether to enter a default judgment.  *Galloway v. Hadl*, 2008 WL 5109758, at *1 (D. Kan. Dec. 2, 2008) (citing *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987)).  "Even after default, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment since a party in default does not admit conclusions of law."  *Seme v. E&H Prof'l Sec. Co.*, Inc., 2010 WL 1553786, at *2 (D. Colo. Mar. 19. 2010) (internal quotations omitted).  Furthermore, a default judgment does not establish the amount of damages.  *DeMarsh*, 2009 WL 3720180, at *2.  Plaintiff must establish that the amount requested is reasonable under the circumstances.  *Id*.  "Damages may be awarded only if the

3

record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Id.* (quoting *Adolph Coors Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)) (internal quotation marks omitted).

### III.   Findings of Fact and Conclusions of Law

At the hearing to establish damages, plaintiff presented evidence of loss of income, mitigation of damages through subsequent employment, and the pain and suffering experienced as a result of the humiliation and stress of losing her job because of her disability immediately following her hospitalization for that disability.   Plaintiff also presented evidence of defendant's willful and malicious disregard of her rights as a person with a disability, and defendant's willful disregard and denial of her request for accommodation.   Defendant did not appear personally or through counsel, and no witnesses were called on its behalf.   The court took the matter under advisement.   Having reviewed the evidence and the applicable law, the court makes the following findings of fact and conclusions of law.[1]

#### A.   *Plaintiff is Entitled to Damages*

The court finds that plaintiff is entitled to damages, based on the following facts, taken from plaintiff's complaint as well as testimony and evidence presented at the hearing.   Plaintiff filed this lawsuit against Aquinas, alleging it violated the Americans with Disabilities Act, when defendant discriminated against her on the basis of her disability (an actual or perceived

---

[1] All pertinent facts establishing jurisdiction, venue and exhaustion are set forth in plaintiff's complaint and taken as true.

4

disability based on her depression and anxiety) and failed to accommodate her disability in violation of the Americans with Disabilities Act. In approximately March of 2013, defendant hired plaintiff as a Nurse Manager for its Kansas City, Kansas facility. As Nurse Manager, plaintiff's primary functions were to supervise and train the registered nurses on defendant's staff. Plaintiff's position of Nurse Manager was a full-time position with forty-hour work weeks. Plaintiff's pay rate as a Nurse Manager was $34.00 per hour. At all relevant times herein, plaintiff's supervisor was Eileen Orel, Administrator.

Plaintiff was an effective worker who never received any work performance write-ups or disciplinary actions. In or around June 2014, plaintiff was hospitalized due to an attempted suicide caused by her deep depression and anxiety. Upon discharge from the hospital, plaintiff's physician ordered plaintiff to attend outpatient therapy three times per week for four weeks. Each of those sessions was scheduled to last approximately three hours. Plaintiff contacted Ms. Orel and requested leave so that she could attend her doctor-ordered therapy sessions. In response to plaintiff's request for leave, Ms. Orel scheduled a meeting with plaintiff in order to discuss plaintiff's request for leave. This meeting was scheduled for June 4, 2014, at plaintiff's home.

On June 4, 2014, Ms. Orel went to the scheduled meeting at plaintiff's home to discuss plaintiff's leave request. While there, Ms. Orel asked plaintiff whether her hospitalization had anything to do with work. Plaintiff informed Ms. Orel that her hospitalization had nothing to do with her employment with defendant. Ms. Orel then gave plaintiff the choice of either quitting her job completely or taking a demotion from Nurse Manager to Float Nurse. Ms. Orel told plaintiff that they did not want to "add more pressure" to plaintiff. Despite plaintiff's proven

track record of quality and effective employment, Ms. Orel also questioned plaintiff's ability to perform her job, asking: "If you can't manage yourself, how can you manage others?"  When faced with the pressure of her immediate supervisor presenting this ultimatum to her, in her own home, just days after being discharged from the hospital, plaintiff initially accepted the position as a Float Nurse.  As a part of her demotion to "Float Nurse," plaintiff would have been scheduled on an unpredictable as-needed basis rather than a consistent forty-hour per week schedule.  Plaintiff lost the authority, prestige, and management responsibility associated with the Nurse Manager position.  Additionally, plaintiff lost her $34.00 per hour rate of pay (and she was never informed of what her new rate of pay would be).

Plaintiff's outpatient therapy sessions were only scheduled to last a total of four weeks, however, when defendant responded to plaintiff's hospitalization and request for accommodation by demoting her, defendant in no way indicated that the demotion was temporary, nor did defendant mention whether plaintiff would be able to return to her previous position as Nurse Manager.  Further, defendant could have easily accommodated plaintiff's requested schedule modification without removing her from her position as Nurse Manager. Later the same day, Ms. Orel emailed the entire Aquinas staff, disclosing that plaintiff had not been at work due to "personal issues," and that plaintiff had "chosen to not return to the Nurse Manager position."  Like Ms. Orel's personal demotion of plaintiff, the email did nothing to suggest that the position change was temporary or that plaintiff may be allowed to return to her previous position as Nurse Manager in four weeks when her outpatient, doctor-ordered therapy was complete.

Plaintiff felt as though she could not return to work for Aquinas as a result of her supervisor's discriminatory comments about her work abilities, her significant demotion, and her supervisor's advertisement of that demotion and plaintiff's "personal issues" to the entire Aquinas staff.  After Ms. Orel left plaintiff's home, and plaintiff had the opportunity to reflect on the situation without the coercion of her immediate supervisor's presence in her home, plaintiff realized that she should not be forced into accepting such a demotion based on her medical condition, which caused her to undergo a brief hospitalization and a brief course of follow-up treatments.  Plaintiff did not return to work for defendant.

Plaintiff's depression and anxiety substantially limit plaintiff's ability to sleep, interact with others, and concentrate.  The evidence also supports the conclusion that defendant perceived plaintiff's depression and anxiety as substantially limiting her ability to work. Defendant discriminated against plaintiff on the basis of her anxiety and depression and failed to accommodate plaintiff's temporary, four-week, change in schedule. Instead of discussing plaintiff's need for accommodation with her, defendant instead demoted and constructively discharged plaintiff.  Defendant unlawfully discriminated against plaintiff in the terms and conditions of her employment, by constructively discharging her due to her disability and by failing to accommodate her temporary four-week change in schedule.

B.      *The Amounts of Plaintiff's Damages*

The following damages are recoverable under the ADA: compensatory and punitive damages (see 42 U.S.C. § 1981a(a)(2)); back pay and front pay (see 42 U.S.C. § 12133, 29 U.S.C. § 794a, and 42 U.S.C. § 2000e-5(g)(1)); and attorneys' fees and costs (see 42 U.S.C. §

12205).  "The court may also, in its discretion, award pre-judgment interest on plaintiff's back pay award."  *Gonzales v. Sandoval County*, 2 F. Supp. 2d 1442, 1446 (D.N.M. 1998) (citing *Daniel v. Loveridge*, 32 F.3d 1472, 1478 (10th Cir. 1994)).  "In ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for default judgment."  *Seme v. E & H Prof'l Sec. Co., Inc.*, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010) (citing *Fanning v. Permanent Solution Indus., Inc.*, 257 F.R.D. 4, 7 (D. D.C. 2009)).

1.     Back Pay Damages

The ADA allows relief in the form of an award of lost back pay and benefits.  *See Gonzales*, 2 F. Supp. 2d at 1446 (citing 42 U.S.C. §§ 2000e-5(g), 12117(a); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)).  Back pay is the amount of money plaintiff would have earned from the date she was unlawfully terminated to the date the first judgment is entered. *Daniel v. Loveridge*, 32 F.3d 1472, 1477 (10th Cir. 1994).  In that time, plaintiff is responsible for mitigating her damages. "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."  42 U.S.C. § 2000e-5(g)(1).  Plaintiff provided sworn testimony and a chart of her estimated back pay damages.  Plaintiff presented evidence that she received income from Aquinas, including gross weekly wages of $1,360.00 ($34 per hour for 40 hours a week).  Plaintiff also presented evidence that she was advised that after working in her position for defendant for one year she would receive a raise of between $.50 and $.75 per hour for an approximate hourly rate of $34.63 per hour no later than April 2015.  Had plaintiff continued

working for defendant, her gross weekly wages from April 2015 to the present would have been $1,385.20.

The period during which plaintiff suffered lost wages damages extended from the date of her constructive discharge on June 4, 2014, to the present.  Plaintiff presented evidence at the hearing of her diligent search for a new job during the time she was unemployed.  Plaintiff presented evidence that her total earned wages from her constructive discharge through the date of the hearing (100.5 weeks) if she had remained employed with Aquinas would have been $138,821.60.  Plaintiff obtained re-employment in January 2015 through the present and during this time she presented evidence that her mitigation earnings totaled an estimated $84,665.85. Subtracting plaintiff's post-discharge mitigation earnings from her total estimated earnings if she had remained employed at Aquinas results in total estimated wage losses following her constructive discharge in the amount of $54,126.48.  The court finds this amount appropriate as an award of back pay.

2.      Prejudgment Interest on Back Pay

It is further within the court's discretion to award prejudgment interest on a plaintiff's back pay award.  *Loeffler v. Frank*, 486 U.S. 549, 557 (1988) ("Prejudgment interest, of course, is 'an element of complete compensation'") (quoting *West Virginia v. United States*, 479 U.S. 305, 310 (1987)); *Gonzales*, 2 F. Supp. 2d at 1446; *Daniel*, 32 F.3d at 1478; *Leidel v. Ameripride Servs., Inc.*, 276 F. Supp. 2d 1138, 1147 & n. 36 (D. Kan. 2003) (applying the interest rate set by the Internal Revenue Service on overpayments and underpayments, 26 U.S.C. § 6621, and holding that such interest should be compounded annually); *Rahn v. Junction City*

*Foundry, Inc.*, 161 F. Supp. 2d 1219, 1241 (D. Kan. 2001) (awarding prejudgment interest at the Kansas statutory rate of ten percent, K.S.A. § 16-201). "While the rate of prejudgment interest on a federal claim is a question of federal law, courts generally look to state law to determine the rate." *Umholtz v. Kansas Dep't of Social & Rehab. Servs*., 2013 U.S. Dist. LEXIS 153993, *3 (D. Kan. Oct. 28, 2013).  The court elects to award prejudgment interest on plaintiff's back pay award of $54,126.48 from the date of plaintiff's constructive discharge to the date of this judgment (23 months), at the Kansas statutory rate of ten percent, compounded annually, resulting in a total prejudgment interest award of $7,935.88.

3.     Front Pay

"Front pay is intended to compensate victims of discrimination following judgment for any continuing effects of discrimination, until the victim can be made whole."  *Gonzales*, 2 F. Supp. at 1447 (citing *Pitre v. Western Elec. Co*., 843 F.2d 1262, 1278 (10th Cir. 1988)).  "The Tenth Circuit has explained that when 'reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result of the discrimination, courts have ordered front pay as a substitute for reinstatement.'"  *Umholtz*, 2013 U.S. Dist. LEXIS 153993, at *4-5 (internal citations omitted).  "In such cases an award of front pay as a substitute for reinstatement is 'a necessary part of the make whole relief mandated by Congress.'"  *Id*.  "A determination of front pay requires the district court to predict future events and consider many complicated and interlocking factors . . . including the possibilities of promotions, demotions, terminations, changes in business circumstances, and death." *Goico v. Boeing Co*., 347 F. Supp. 2d 986, 992

(D. Kan. 2004) (citing *Greene v. Safeway Stores, Inc*., 210 F.3d 1237 (10th Cir. 2000)). "These unknowable factors always make a front pay award somewhat speculative." *Id*. (citing *Wulf v. City of Wichita*, 883 F.2d 842, 873 (10th Cir. 1989)). "But a defendant should not be able to take advantage of the fact that its unlawful conduct is the cause of such uncertainty." *Id*. Plaintiff seeks three years of front pay. Plaintiff presented evidence that she had no intentions of seeking alternate employment and intended to remain employed for defendant for a minimum of three years. Plaintiff presented evidence that if she had remained employed with defendant her total earned wages for the three years following the date of the hearing would have been $216,091.20. Plaintiff also presented evidence that her mitigation earnings for the three years following the date of the hearing would be $191,505.60. Subtracting plaintiff's future mitigation earnings from her total estimated earnings if she had remained employed at Aquinas for the following three years results in total estimated future wage losses in the amount of $24,585.60. The court finds this amount to be an appropriate front pay award.

4.    Compensatory Damages

The ADA allows compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses. 42 U.S.C. § 1981a(b)(3). The amount of compensatory and punitive damages recoverable is limited; in relevant part, if the defendant has more than 15 but less than 100 employees, plaintiff's compensatory and punitive damages cannot exceed $50,000. *Id*. Here, plaintiff concedes that defendant employs more than 15 but less than 100 employees. At the hearing, plaintiff presented evidence that she suffered humiliation, stress and depression as she

11

found herself unemployed for no legitimate reason immediately after she had attempted suicide and been hospitalized for her deep depression and anxiety.  Plaintiff further presented evidence that the worries and stress associated with her loss of job and income at such a challenging time in her life was extraordinarily stressful for her and her family.  Plaintiff testified that she was uncertain how to quantify her pain and suffering but in light of the foregoing undisputed evidence of her emotional distress and related harms she asked for $25,000 in compensatory damages.  The court finds this award appropriate.

5.      Punitive Damages

Plaintiff has also requested an award of punitive damages under the ADA against defendant, in the amount of $25,000, which, combined with the requested compensatory damages would total $50,000, consistent with the applicable damages cap for an employer with between 15 and 100 employees.  42 U.S.C. § 1981a(b)(3).  Under the ADA an award of punitive damages is available if the plaintiff proves an employer engaged in a discriminatory practice "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).  "Malice" or "recklessness" exists if a plaintiff proves an employer discriminated "in the face of a perceived risk that its actions [would] violate federal law." *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 536 (1999).

Here, the undisputed and admitted facts demonstrate that Aquinas intentionally discriminated against plaintiff in the face of a perceived risk that its actions would violate federal law, consistent with the *Kolstad* standard.  Plaintiff provided testimony that defendant maintained an anti-discrimination policy, establishing that defendant was fully aware of the

12

ADA's prohibitions against discrimination and requirement that employers provide reasonable accommodations for employees with disabilities.  In addition, the court notes that defendant demoted plaintiff stating, that "if you can't manage yourself, how can you manage others," knowing that plaintiff had just been admitted to the hospital after attempting suicide.  Such callous conduct, especially by medical personnel, supports a finding of malice in this instance. As the court has found defendant to be in default, the court must accept as true plaintiff's allegations, including that defendant acted with malice and reckless indifference to plaintiff's rights in refusing her requested accommodation, unnecessarily demoting her following her hospitalization for anxiety and depression, and ultimately constructively discharging her because of her disability.

Thus, as liability for punitive damages has been established, the court need now only determine the amount of damages to be awarded.  *See Jones v Courtney*, 2007 U.S. Dist. LEXIS 103604, *18 (D. Kan. Sept. 13, 2007); *Meitler Consulting, Inc. v. Dooley*, 2006 U.S. Dist. LEXIS 80041, at *20 (D. Kan. Nov. 1, 2006); *Beck v. Atlantic Contracting Co*., Inc., 157 F.R.D. 61, 64 (D. Kan. 1994).  Punitive damages are awarded in ADA actions to punish defendants for their willful or malicious conduct and to deter others from similar behavior.  Punitive damages are, by definition, not intended to compensate the injured party, but rather to punish a wrongdoer whose action was intentional and malicious.  *Newport v. Fact Concerts, Inc*., 453 U.S. 247, 266-67 (1981).  Consequently, punitive damages are typically determined by reference to factors such as the character of the wrong and the amount necessary to punish the defendant.  *Carlson v. Green*, 446 U.S. 14, 48 (1980).  The fact finder has a "great deal of discretion" in deciding the amount of the punitive award.  *Id.*  Also, it is well-established that punitive damages should bear

a "reasonable relationship to the amount of compensatory damages." *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 581 (1996).  Although punitive damages are not measured by the extent of injury to a plaintiff, actual damages are a proper factor for consideration by the fact finder in determining the amount of punitive damages. *Poullard v. Turner*, 298 F.3d 421, 423 (5th Cir. 2002).  The fact finder may also consider the financial condition of the defendant in determining the amount of punitive damages. *City of Newport v Fact Concerts, Inc*., 453 U.S. 247, 270 (1981) ("evidence of tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded"); *Rowlett v. Anheuser-Busch*, 832 F. 2d 194, 206 (1st Cir. 1987) ("a rich defendant may well be required to pay more than a poor one who committed the same wrong.").  Courts have recognized that "deterrence is directly related to what people can afford to pay." *Patterson v. Balsamico*, 440 F.3d 104, 122 (2d Cir. 2006) (citations omitted).

Here, the court finds that an award of punitive damages in the amount of $25,000 is appropriate in light of the harm to plaintiff in terms of lost wages and compensatory damages and the degree of wrong-doing from refusing her requested accommodation, unnecessarily demoting her following her hospitalization for anxiety and depression, and constructively discharging her because of her disability.

6.     Attorneys' Fees and Costs

Based on the foregoing determination of default judgment and award of damages, plaintiff is a prevailing party in this matter, and therefore entitled to her reasonable attorneys' fees and costs under the ADA.  *See* 42 U.S.C. § 12205.  Plaintiff has filed a supplemental

memorandum to her motion for default judgment and request for hearing on damages requesting her fees in this matter in the total amount of $35,000, and costs in the total amount of $483.65.

In determining reasonable attorneys' fees, the court must arrive at a lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate and then determine whether the lodestar figure is subject to upward or downward adjustment. *See Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995). Plaintiff bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249-50 (10th Cir. 1998). The first step in calculating the lodestar is to determine the number of hours counsel reasonably expended on the litigation. *See id*. at 1249. The burden is on plaintiff to show that the hours claimed are reasonable. *See Deters v. Equifax Credit Info. Servs., Inc*., 1998 U.S. Dist. LEXIS 266, at *9 (D. Kan. Jan. 6, 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Attorneys normally do not bill all hours expended in litigation to a client, and "an applicant should exercise 'billing judgment' with respect to a claim of the number of hours worked." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998) (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)). To show billing judgment, counsel for plaintiff should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary and the court has a corresponding obligation to exclude hours not "reasonably expended" from the calculation. *Id*. Counsel for plaintiff has presented evidence that they spent over 100 hours on the case over the course of almost two years representing plaintiff. The court has reviewed the detailed hourly billing records presented by counsel and finds that the claimed hours are reasonable and were necessary for the pursuit of this litigation.

15

In setting the hourly rate, "the court should establish, from the information provided to it and from its own analysis of the level of performance and skills of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits, calculated as of the time the court awards fees." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). A reasonable hourly rate comports with rates "prevailing in the community for similar services for lawyers of reasonably competent skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11. "A district judge may turn to his own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994) (citation omitted). To determine a reasonable rate, the court focuses on the rates of "lawyers of comparable skill and experience." *Ellis*, 163 F.3d at 1204 (citations omitted).

Plaintiff seeks hourly rates ranging from $325.00 per hour for lead counsel, $350.00 per hour for a firm partner, $200.00 per hour for an associate attorney, and $125.00 per hour for paralegal time. Plaintiff's counsel has presented an affidavit regarding their regular billing rates. After considering the level of experience and skill of counsel and the undersigned's own knowledge of the prevailing market rates, the court finds that the requested hourly rates are reasonable. The court further finds that no adjustment of the lodestar figure is warranted. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (while district court may consider other factors to adjust fee upward or downward, many of the factors "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate"). The court therefore awards Plaintiff her reasonable attorneys' fees in the amount of $35,000.

In addition to attorneys' fees, the prevailing party is entitled to recover her expenses that are usually itemized and billed separately, as long as the expenses are reasonable. *See Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir. 1997). Plaintiff asks the court to award expenses for plaintiff's filing fee in the amount of $400.00, service expenses in the amount of $65.00, research expenses in the amount of $9.40, and postage in the amount of $9.25. These items are ordinarily itemized and billed separately and are therefore appropriate expenses in this matter. Accordingly, the court will award plaintiff her reasonable expenses of $483.65, for a total award of attorneys' fees and expenses for plaintiff of $35,483.65.

7.     Post-Judgment Interest

The court further finds appropriate an award of post-judgment interest pursuant to 28 U.S.C. § 1961(a), by which "the court achieves the statutory goal of compensating the plaintiff while removing defendant's incentive to delay payment of the judgment." *Leidel v. Ameripride Servs., Inc*., 276 F. Supp. 2d 1138, 1148 (D. Kan. 2003); *see DeMarsh v. Tornado Innovations, L.P*., 2009 WL 3720180, at *7 (D. Kan. Nov. 4, 2009) (awarding post judgment interest on default); *Albert v. Wesley Health Servs*., 2001 WL 503241, at *3 (D. Kan. May 10, 2001) (same).

C.     *Judgment*

Thus the court finds sufficient evidence and an appropriate legal basis to award plaintiff her damages in the total amount of $172,131.61, which is comprised of: $54,126.48 back pay; $7,935.88 in prejudgment interest on plaintiff's back pay award; $24,585.60 front pay; $25,000

17

in compensatory damages; $25,000 in punitive damages; and $35,483.65 in attorneys' fees and costs.  The court further awards statutory post-judgment interest from the date of the judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for default judgment (doc. 6) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** judgment be entered in favor of plaintiff against defendant for the total amount of $172,131.61 plus statutory post-judgment interest.

**IT IS SO ORDERED**.

Dated this 16th day of May, 2016, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge